413 S.E.2d 129

**Jeffrey R. CUNNINGHAM, Petitioner Below, Appellant**

v.

**Lee BECHTOLD, Commissioner, West Virginia Department of Motor Vehicles, Respondent Below, Appellee.**

**No. 20140.**

Supreme Court of Appeals of West Virginia.

Submitted Sept. 11, 1991.

Decided Dec. 17, 1991.

---

David A. Jividen, Donna L. Crow, James Stoneking, Bordas & Bordas, Wheeling, for appellant.

Andrew F. Tarr, Asst. Atty. Gen., Charleston, for appellee.

PER CURIAM:

The appellant, Jeffrey R. Cunningham, appeals an order of the Circuit Court of Marshall County entered on August 13, 1990, which affirmed the decision of the Department of Motor Vehicles revoking the appellant's license to drive in the state of West Virginia for a period of ten years based on the appellant's refusal to submit to a designated secondary chemical test in accordance with the provisions of *W. Va. Code*, 17C–5–7 [1986]. This Court is of the opinion that there is no reversible error and accordingly, the order of the circuit court is affirmed.

I

Sgt. Frank Dunn of the Moundsville City Police Department was on duty during the early morning hours of February 3, 1989, when he observed a vehicle travelling in the opposite direction designated for one-way traffic on Tomlinson Avenue. Sgt. Dunn signaled the driver of the vehicle by flashing the blue lights of his patrol car and stopped the vehicle at Eighth Street and Tomlinson Avenue.

Sgt. Dunn then approached the vehicle and observed that the appellant was the driver. Sgt. Dunn asked the appellant whether he had been drinking, and the appellant responded that he had drunk a couple of beers. Sgt. Dunn noticed an open can between the two front seats of the appellant's vehicle. Sgt. Dunn then asked the appellant to give him his driver's license. At that time, Officer Keith R. Johnson arrived in response to Sgt. Dunn's call for a back-up.

Sgt. Dunn asked Officer Johnson to administer the field sobriety test to the appellant so that Sgt. Dunn could assist another officer in an unrelated matter. Officer Johnson smelled the odor of alcohol from the appellant and asked the appellant to perform some field sobriety tests. After giving the appellant three field sobriety tests, Officer Johnson believed the appellant had failed those tests[1] and arrested the appellant for driving under the influence of alcohol at 2:14 a.m. As Officer

---

1. The appellant was given a walk and turn test, a horizontal nystagmus test and a one-leg stand test. Officer Johnson testified that the appellant began the walk and turn test before he completed giving him the instructions and that he did not touch "heel-to-toe." Officer Johnson also testified that the appellant lost his balance while he was walking and had to use his arms for balance. Officer Johnson further stated that the appellant swayed while attempting to balance on the one-leg stand and that he kept putting his foot down. Officer Johnson also stated that the appellant's eyes did not follow his finger "smoothly" on the horizontal gaze nystagmus test.

Johnson was placing the appellant under arrest, Sgt. Dunn returned to the scene accompanied by Officer Art Watson. Officer Johnson placed the appellant in his patrol car with the assistance of the other officers and drove the appellant to the police station. Officer Johnson and Officer Watson stayed with the appellant's vehicle until the tow truck arrived.

Upon arriving at the police station, Officer Johnson directed the appellant to sit in a chair while he completed some paper work at his desk. The appellant subsequently rose from his chair and walked toward the door of the office as though he was going to leave. Officer Johnson told the appellant to return to his seat but the appellant refused. When Officer Johnson attempted to make the appellant sit down in the chair, the two began to struggle. The dispatcher at the police station heard the struggle and radioed an emergency call to Sgt. Dunn to come to the police station.

When Sgt. Dunn arrived at the police station, he found the appellant and Officer Johnson struggling. Sgt. Dunn and Officer Johnson then wrestled the appellant to the floor and handcuffed him. The appellant's nose was bleeding from the fracture he sustained during the altercation.

After restraining the appellant, the officers seated him in the chair next to the intoxilyzer. Officer Johnson advised the appellant of his rights and read to him a written implied consent statement containing the penalties for refusing to submit to a designated secondary chemical test as required by *W. Va. Code*, 17C–5–4 [1989].[2] Officer Johnson informed the appellant that he had fifteen minutes within which to consent to the test before a refusal would be deemed final. The appellant did not submit to the test.[3]

At 2:38 a.m., the paramedics arrived to treat the appellant's broken nose and the scratches he had suffered during the alter-

cation with Officer Johnson and Sgt. Dunn. The paramedics cleaned the blood from his nose and mouth area but did not provide any medical treatment. Although the paramedics offered to transport the appellant to the hospital, Officer Johnson stated that he would take the appellant to the hospital. At 3:25 a.m., Officer Johnson drove the appellant to Reynolds Memorial Hospital. The appellant was then treated and released into Officer Johnson's custody. Officer Johnson transported the appellant to the county jail at 4:21 a.m., where he was released on bail at 4:55 a.m.

A hearing was held before a hearing examiner for the Department of Motor Vehicles on April 18, 1989. The hearing was then continued at the close of the evidence so that the appellant's counsel could subpoena the paramedics to testify. Another hearing was then held on May 30, 1989.

On March 14, 1990, the Department of Motor Vehicles entered a final order pursuant to *W. Va. Code*, 17C–5–7 [1986], revoking the appellant's license to drive in the state of West Virginia for a period of ten years based on the appellant's refusal to submit to a designated secondary chemical test. The decision of the Department of Motor Vehicles was subsequently upheld by the circuit court on August 13, 1990. It is from this order that the appellant now appeals.

II

The appellant first asserts that the circuit court erred in finding that the evidence was sufficient to support a finding that Officer Johnson had probable cause to stop and arrest the appellant for driving under the influence of alcohol. The state maintains that under the standards stated by this Court in *Simon v. West Virginia Dep't of Motor Vehicles*, 181 W.Va. 267, 382 S.E.2d 320 (1989), there was probable

---

**2.** Officer Johnson testified that he not only read the statement, but he also gave the statement to the appellant. The appellant, however, testified that he was not given a written statement at that time.

**3.** Officer Johnson testified that the appellant refused to take the test. However, the appellant testified that he was unable to take the breathalyzer test because he was swallowing the blood from his broken nose and his throat and voice box ached.

cause for Officer Johnson to make the arrest.

■ The test for a warrantless misdemeanor arrest was stated in the syllabus of *Simon:*

Probable cause to make a misdemeanor arrest without a warrant exists when the facts and circumstances within the knowledge of the arresting officer are sufficient to warrant a prudent man in believing that a misdemeanor is being committed in his presence.

■ We find in the case before us that there was probable cause to stop and arrest the appellant for driving under the influence of alcohol. The undisputed evidence shows that the appellant was observed by Sgt. Dunn driving the wrong way down a one-way street shortly after 2:00 a.m. on February 3, 1989. When questioned by Sgt. Dunn as to whether he had been drinking, the appellant acknowledged that he had drunk a couple of beers. Furthermore, Officer Johnson detected the odor of alcohol when he asked the appellant to get out of his car and noticed the unsteadiness of the appellant's walk. Moreover, the appellant was unable to satisfactorily complete any of the field sobriety tests given to him by Officer Johnson. Thus, we find that the facts and circumstances within the knowledge of Officer Johnson were sufficient to warrant him in believing that the appellant was driving under the influence of alcohol.

### III

The appellant next contends that the evidence was insufficient to support a finding that the appellant was given a written statement regarding the penalties for refusing to undergo a secondary chemical test. The state contends that the circuit court properly found, based on Officer Johnson's testimony, that the appellant was given a written statement concerning the penalties for refusing to undergo the secondary chemical test and that the trial court's finding on this issue cannot be reversed unless it is plainly wrong.

■ The record in this case shows that Officer Johnson testified that he read the implied consent form to the appellant at 2:28 a.m. and that he explained to the appellant that if he did not take the intoxilyzer test, then he would automatically lose his license for a period of at least one year and up to life. Officer Johnson also testified that he gave the appellant a copy of the implied consent form.[4] The Commissioner of the Department of Motor Vehicles specifically found that Officer Johnson read and gave to the appellant a written statement containing the penalties for refusing to submit to a designated secondary chemical test as required by *W.Va.Code,* 17C–5–4 [1989]. The circuit court also found in its order that the appellant had been given a written statement concerning the penalties for refusing to undergo testing.

■ The scope of judicial review of decisions of the Department of Motor Vehicles was stated by this Court in syllabus point 1 of *Johnson v. State Dep't of Motor Vehicles,* 173 W.Va. 565, 318 S.E.2d 616 (1984):

'Upon judicial review of a contested case under the West Virginia Administrative Procedure Act, Chapter 29A, Article 5, Section 4(g), the circuit court may affirm the order or decision of the agency or remand the case for further proceedings. The circuit court shall reverse, vacate or modify the order or decision of the agency if the substantial rights of the petitioner or petitioners have been

---

**4.** Officer Johnson testified on cross-examination that he recalled giving the appellant a copy of the implied consent form:

Mr. Jividen: Well, I'm talking about the instructions that he has if he does not take the breathalyzer, what happens?
Ofc. Johnson: I gave him a copy of the Implied Consent form. I read it to him and gave him a copy of it.

Mr. Jividen: A copy of that Implied Consent form?
Ofc. Johnson: Yes, I did.
Mr. Jividen: What color is that copy?
Ofc. Johnson: Yellow.
Mr. Jividen: And when did you give it to him?
Ofc. Johnson: I gave it to him right after I read it to him. I peeled it off and handed it to him. What he did with it is his business.

prejudiced because the administrative findings, inferences, conclusions, decisions or order are: (1) In violation of constitutional or statutory provisions; or (2) In excess of the statutory authority or jurisdiction of the agency; or (3) Made upon unlawful procedures; or (4) Affected by other error of law; or (5) Clearly wrong in view of the reliable, probative and substantial evidence on the whole record; or (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.' Syllabus Point 2, *Shepherdstown Volunteer Fire Department v. West Virginia Human Rights Commission,* [172] W.Va. [627], 309 S.E.2d 342 (1983). *See also Gibbs v. Bechtold,* 180 W.Va. 216, 218, 376 S.E.2d 110, 112 (1988).

Upon review of the testimony given in this case, we cannot conclude that the Commissioner's findings of fact on this issue were clearly wrong, and therefore the circuit court properly upheld those findings.

## IV

The appellant further contends that the evidence was insufficient to support the Commissioner's findings that the appellant was physically able to undergo a breathalyzer test and that he refused to take the test. The state maintains that the evidence indicates that the appellant was able to take the test despite his injury, and that he refused.

With respect to the issue of whether the appellant refused to take the breathalyzer test, Officer Johnson testified that after the altercation, at 2:28 a.m., he read the appellant his rights and also read to him the implied consent form. Officer Johnson testified that he explained to the appellant that if he did not take the intoxilyzer test, he would automatically lose his license for a period of at least one year and up to life. Officer Johnson testified that the appellant then refused to take the intoxilyzer test. The appellant testified that he refused to take the breathalyzer test because he couldn't take the test.

The general rule as to whether there was a refusal to take a secondary chemical test was stated by this Court in syllabus point 4 of *Jordan v. Roberts,* 161 W.Va. 750, 246 S.E.2d 259 (1978):

Where the request is made to take the ultimately designated test under the implied consent law and the licensee by his conduct or words manifests a reluctance to take the test or qualifies his assent to take the test on factors that are extraneous to the procedures surrounding the test, proof of refusal is sufficiently established.

The appellant admitted that he refused to take the test. However, he testified that his refusal to take the test was based on the fact that he believed he was physically unable to take the test because he was swallowing blood and his throat hurt as a result of his broken nose. We must now consider whether his refusal to take the test based on his injury was a lawful refusal.

The same factual issue in this case was before the District Court of Appeal in Florida in *Solomon v. State,* 538 So.2d 931 (Fla.Dist.Ct.App.1989). In *Solomon,* the defendant refused to take the intoxilyzer test because his nose had been broken while he was being held at the police station. His license was automatically suspended for refusal to take the test and the defendant appealed the suspension. The Florida court found that Fla.Stat. § 322.-261(3) (Supp.1991) sets forth four issues determinative of whether a person lawfully refused to take a chemical test or tests as provided for by that section:

a) Whether the arresting law enforcement officer had reasonable cause to believe that the person had been driving or had been in actual physical control of a motor vehicle in this state while under the influence of alcoholic beverages, chemical substances as set forth in s. 877.111, or controlled substances;

b) [I]n the case of a breath or urine test, whether the person was placed under lawful arrest;

c) [W]hether the person refused to submit to any such test after being requested to do so by a law enforcement officer; and

d) [W]hether the person had been told that, if he refused to submit to such test, his privilege to operate a motor vehicle would be suspended for a period of 1 year, or for a period of 18 months if his driving privilege had been previously suspended for a refusal to submit to such test.

*Id.* at 932–33. The Court held that the defendant's broken nose was not a basis for refusing to take the breathalyzer test and his suspension was affirmed.[5]

In West Virginia, factors similar to those cited in *Solomon* are contained in *W.Va. Code,* 17C–5–7 [1986], which provides in pertinent part:

The officer shall within forty-eight hours of such refusal, sign and submit to the commissioner of motor vehicles a written statement of the officer that (1) he had reasonable grounds to believe such person had been driving a motor vehicle in this state while under the influence of alcohol, controlled substances or drugs; (2) such person was lawfully placed under arrest for an offense relating to driving a motor vehicle in this state while under the influence of alcohol, controlled substances or drugs; (3) such person refused to submit to the secondary chemical test finally designated in the manner provided in section four [§ 17C–5–4] of this article; and (4) such person was given a written statement advising him that his license to operate a motor vehicle in this state would be revoked for a period of at least one year and up to life if he refused to submit to the secondary test finally designated in the manner provided in section four [§ 17C–5–4] of this article.

These four factors represent the burden of proof.

■ We have already found that the Department of Motor Vehicles established that the officer had probable cause to arrest the appellant, that the appellant was placed under lawful arrest, that the appellant refused to submit to the breathalyzer test and that the appellant was advised that his license would be revoked if he refused to take the test. Since the Department of Motor Vehicles satisfied its burden of proof, it logically follows that the burden then shifts to the appellant to show that he was physically unable to take the breathalyzer test. *See Commonwealth Dep't of Transportation v. Groscost,* 142 Pa.Cmwlth. 36, 596 A.2d 1217 (1991) (upon showing by the Department that the driver was arrested for driving under the influence of alcohol, was asked to submit to a breathalyzer test, refused to do so, and was specifically warned that refusal would result in revocation of his driver's license, the burden shifts to the driver to show he was physically unable to make a refusal).

■ In the case now before us, the only evidence presented on the issue of whether the appellant was physically able to take the breathalyzer test with a fractured nose, other than the appellant's own testimony, was the testimony of one of the paramedics, Mark S. Markus, who was subpoenaed by the appellant.[6] Mr. Markus testified that the appellant was able to breathe and that "[h]e was doing so at a regular basis." Mr. Markus also testified that he "didn't notice any deviation in the septum." Although the appellant introduced the records from Reynolds Memorial Hospital, those records merely confirm that the appellant's nose was fractured.[7] Thus, the

5. The Florida court in *Solomon* also found that the defendant's acquittal on the criminal charge of driving under the influence was not a determinative factor. *Id.* at 933.

Although this issue was not raised in the case before us, we note that the appellant was found not guilty on the criminal charge of driving under the influence.

6. Mr. Markus, upon arriving at the police station, observed that the appellant was "sitting in a chair with dried, coagulated blood about the

nose and upper lip and lips and inside the mouth." Mr. Markus testified that he cleaned up the "dried blood" from the appellant's nose and mouth.

7. The medical report indicated that there was obstruction of the left nasal passage. However, the medical report also stated that the oropharynx was clear. The oropharynx is the central portion of the pharynx, which serves as a passageway for air from the nasal cavity to the larynx.

appellant failed to meet his burden.[8]

V

Next, the appellant contends that the evidence was insufficient to support the Commissioner's findings that the appellant was provided a period of fifteen minutes to consent to the test in accordance with *W.Va.Code,* 17C–5–7 [1986][9]. The state maintains that the evidence was sufficient to support that finding.

Officer Johnson testified that he advised the appellant that he had fifteen minutes to decide whether to take the intoxilyzer test before it would be considered a refusal.[10] The appellant confirmed in his testimony that Officer Johnson informed him that he had fifteen minutes within which to consent to the test. There is no evidence, however, in the record which indicates that the appellant advised Officer Johnson within the fifteen-minute period or anytime thereafter that he was willing to submit to the breathalyzer test.

■ This Court has already addressed the issue of whether silence manifests a refusal to submit to a secondary chemical test under the provisions of *W.Va.Code,* 17C–5–7 [1986] in syllabus point 1 of *In re Matherly,* 177 W.Va. 507, 354 S.E.2d 603 (1987):

> When the requirements of *W.Va.Code,* 17C–5–7 [1983] have otherwise been met, and a driver refuses to or fails otherwise to respond either affirmatively or negatively to an officer's request that he submit to a blood alcohol content test, the driver's refusal or failure to respond is a

refusal to submit within the meaning of *W.Va.Code,* 17C–5–7 [1983].

*See also* syl. pt. 2, *Gibbs v. Bechtold, supra.*

■ The evidence before us shows that Officer Johnson read the implied consent form to the appellant, gave him a copy of that form, and advised him that if he did not agree to submit to a breathalyzer test within fifteen minutes it would be deemed a refusal. There is no indication in the record that the appellant at any time agreed to submit to the test.

Thus, we cannot conclude that the Commissioner's finding that the appellant was given fifteen minutes to consent to the test was clearly wrong under the standards set forth in *Johnson, supra.*

VI

Finally, the appellant asserts that the circuit court erred in finding that the evidence was sufficient to support a finding that the Commissioner did not abuse his discretion in revoking the appellant's license. The state maintains that the circuit court was correct in not reversing the Commissioner's decision.

Upon review of the record before us under the standards stated in *Johnson, supra,* we conclude that none of the grounds for reversal existed under the provisions of *W.Va.Code,* 29A–5–4(g) [1964] and therefore, the circuit court correctly upheld the Commissioner's decision. Thus, for the reasons stated herein, we affirm the deci-

---

**8.** There is a troubling aspect to this case in that the appellant's nose was broken during a scuffle at the police station. We stress the absence of evidence showing that the struggle was brought on by the appellant's refusal to take the test and that it was unprovoked. Because of the conflict in the evidence, we are unable to resolve who is at fault. By our decision today finding that the appellant unlawfully refused to take the breathalyzer test, we are in no way condoning unprovoked attacks on individuals who may be in an impaired state at the time of their arrest.

**9.** *W.Va.Code,* 17C–5–7 [1986] provides, in relevant part:

> If a person initially refuses to submit to the designated secondary chemical test after be-

ing informed in writing of the consequences of such refusal, he shall be informed orally and in writing that after fifteen minutes said refusal shall be deemed to be final and the arresting officer shall *after said period of time expires have no further duty to provide the person with an opportunity to take the secondary test.*

(emphasis added).

**10.** The record indicates that the appellant was advised of his rights under *W.Va.Code,* 17C–5–7 at 2:28 a.m. The record further indicates that the paramedics arrived at 2:38 a.m. The appellant was taken to the hospital by Officer Johnson at 3:25 a.m.

sion of the Circuit Court of Marshall County.

Affirmed.