464 S.E.2d 598

**STATE of West Virginia, Plaintiff Below, Appellee,**

v.

**Jane DAVIS, Defendant Below, Appellant.**

**No. 22813.**

Supreme Court of Appeals of West Virginia.

Submitted Sept. 19, 1995.

Decided Oct. 27, 1995.

---

Matthew J. Hayes, Pepper & Nason, Charleston, for appellant.

Darrell V. McGraw, Jr., Attorney General, Dawn E. Warfield, Deputy Attorney General, Charleston, for appellee.

## PER CURIAM:

This case is before this Court upon an appeal from the final order of the Circuit Court of Pocahontas County, West Virginia, entered on September 21, 1994. Pursuant to that order, the appellant, Jane Lee Davis, was adjudged guilty, following trial, of first offense driving under the influence of alcohol, a misdemeanor. *W.Va.Code*, 17C–5–2 [1994]. The appellant was sentenced to confinement in jail for 24 hours and fined $150.00, plus costs. At issue is the appellant's arrest in the context of routine road checks or sobriety checkpoint roadblocks conducted by police officers. For the reasons stated below, we affirm the appellant's conviction.

### I

On the evening of June 11, 1994, the appellant attended a family reunion dinner at Watoga State Park in Pocahontas County, West Virginia. During the dinner, the appellant consumed five beers, finishing the last one at approximately 11:30 p.m. that night. Thereafter, the appellant and her friend, Janis Kay Phillips, drove to the Town of Marlinton, also in Pocahontas County, where they were staying. The appellant was driving a 1988 Plymouth Voyager.

Just after midnight, as they drove into Marlinton, the appellant and Phillips encountered a police roadblock consisting of two officers and two police vehicles with flashing lights. The two officers were the Chief of Police of the Town of Marlinton and a Pocahontas County Deputy Sheriff. The roadblock was being conducted by the Chief of Police. A third officer, Trooper Glenn E. Galloway of the West Virginia Department of Public Safety, was present. Trooper Galloway had just gone off-duty and had been asked by the other two officers to assist in the roadblock.

At trial, Trooper Galloway testified that the appellant's vehicle was moving "excessively slow" as it approached the roadblock and, although motioned forward by the Trooper, stopped approximately thirty feet away. Trooper Galloway approached the vehicle and asked the appellant for her driver's license, vehicle registration card and proof of insurance. According to Trooper Galloway, he then noticed the odor of an alcoholic beverage on the appellant's breath. Furthermore, the appellant's speech was slurred, and her eyes appeared to be red.[1]

Trooper Galloway testified that, at the roadblock, he administered a horizontal gaze nystagmus (HGN) test to the appellant, which the appellant failed. Trooper Galloway arrested the appellant for driving under the influence of alcohol and transported her to the Pocahontas County Jail. At the jail, Trooper Galloway administered the walk-and-turn test and the one-legged-stand test to the appellant. Trooper Galloway testified that the appellant failed those tests. In addition, the appellant took a secondary chemical breath test, which registered a level of intoxication of .097.[2]

---

1. Trooper Galloway testified at trial as follows:
   Q. What was the manner of her speech?
   A. Her speech was slurred. She appeared to be intoxicated to me.
   Q. And what was her appearance?
   A. Her eyes were red and dress was casual.
   Q. Okay. What did you do after you got the driver's registration?
   A. At that point, I asked her to quote her alphabet to me, and she couldn't quote her alphabet correctly.

2. *W.Va.Code*, 17C–5–2(d) (1994), provides:
   (d) Any person who:
   (1) Drives a vehicle in this state while:
   (A) He is under the influence of alcohol, or
   (B) He is under the influence of any controlled substance, or
   (C) He is under the influence of any other drug, or
   (D) He is under the combined influence of alcohol and any controlled substance or any other drug, or
   (E) He has an alcohol concentration in his or her blood of ten hundredths of one percent or more, by weight;
   (2) Is guilty of a misdemeanor, and, upon conviction thereof, shall be confined in jail for not less than one day nor more than six months, which jail term shall include actual confinement of not less than twenty-four hours, and shall be fined not less than one hundred dollars nor more than five hundred dollars.
   Although *W.Va.Code*, 17C–5–2 [1994], has since been amended, the amendments are not relevant to this case.

Based upon the above circumstances, the appellant was found guilty of first offense driving under the influence of alcohol, *W.Va. Code*, 17C-5-2 [1994], following a trial in magistrate court. The appellant appealed her conviction to the Circuit Court of Pocahontas County and filed a motion to dismiss and a motion to suppress, both of which motions challenged the validity of the police roadblock and the resulting stop of the appellant's vehicle. An evidentiary hearing upon those motions was conducted by the circuit court in August 1994, and the motions were denied. Thereafter, in September 1994, a nonjury trial was conducted by the circuit court at the conclusion of which the appellant was found guilty beyond a reasonable doubt of first offense driving under the influence of alcohol. The appellant was sentenced to confinement in jail for 24 hours and fined $150.00, plus costs. A stay of the sentence was granted pending appeal to this Court.

## II

The appellant contends that the Circuit Court of Pocahontas County committed error in denying her motion to dismiss and motion to suppress because, as the appellant asserts, the police roadblock and resulting stop of her vehicle transgressed the prohibitions against unreasonable searches and seizures found in *U.S. Const.* amend. IV, and *W.Va. Const.* art. III, § 6.[3] In essence, the appellant asserts that the warrantless stop of her vehicle, and her subsequent arrest, were unlawful because the roadblock was, in fact, a sobriety checkpoint roadblock and, as such, was not conducted pursuant to West Virginia Department of Public Safety guidelines and procedures. Moreover, the appellant contends that, although she had been drinking beer during the evening in question, she was not under the influence of alcohol while driving.

The State, however, contends that the purpose of the roadblock was to verify the possession and validity of driver's licenses, vehicle registration cards and mandatory insurance. Moreover, the State asserts, since it is

undisputed that every vehicle approaching the roadblock was stopped, the appellant's vehicle was lawfully stopped. After the stop, according to the State, Trooper Galloway found probable cause to arrest the appellant.

It should be noted that the only witness for the State in the proceedings below was Trooper Galloway. Although he admitted during his testimony that the roadblock included a check for drunk drivers, he denied that the roadblock had been conducted as a sobriety checkpoint. As reflected in the final order of September 21, 1994, the circuit court found:

The Court further found that on June 11, 1994, the Chief of the Town of Marlinton and a Pocahontas County Deputy planned to operate a routine checkpoint that evening, and Trooper Glenn Galloway was aware of this, but he did not participate in the checkpoint early in the evening. When he was ready to go off duty, he was requested by the Chief to assist in the checkpoint, which he did. Other vehicles were stopped and checked before the defendant's car appeared. The slow speed of the vehicle and the stopping of the vehicle approximately thirty feet from the trooper raised questions in the mind of the trooper. He approached the vehicle and asked to see the defendant's license and registration, and the other matters developed following these inquiries. Therefore, this was not a sobriety checkpoint but a routine road check. There was no subterfuge because the trooper had the right to make routine stops. He had the right to pursue all violations of the law that his investigations following the stop reveal[ed].

In *State v. Frisby*, 161 W.Va. 734, 245 S.E.2d 622 (1978), *cert. denied*, 439 U.S. 1127, 99 S.Ct. 1043, 59 L.Ed.2d 87 (1979), a motorist was detained by a police officer in the City of Weirton, West Virginia, because the license plate on the motorist's vehicle appeared to have no state identification. Subsequently, it was learned that the license

---

**3.** *U.S. Const.* amend. IV provides: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated[.]" Similarly, *W.Va. Const.* art. III, § 6, provides:

"The rights of the citizens to be secure in their houses, persons, papers and effects, against unreasonable searches and seizures, shall not be violated."

plate was a "limited edition" plate from the State of Missouri. During the stop of the vehicle, however, the odor of marihuana was noted and a rifle was seen in plain view. Subsequently, the motorist was convicted of possession of marihuana, with intent to deliver.

■ This Court affirmed the conviction, in *Frisby*, and stated that the detention of the motorist for the purpose of investigating his vehicle registration and license was reasonable and that the evidence seized as a direct result of that investigation was not tainted. 161 W.Va. at 739–40, 245 S.E.2d at 626. Syllabus point 5 of *Frisby* holds:

> While police officers may enforce the licensing and registration laws for drivers and motor vehicles respectively by routine checks of licenses and registrations, such checks must be done according to some non-discriminatory, random, pre-conceived plan such as established check points or examination of vehicles with particular number or letter configurations on a given day; accordingly, detention of vehicles without probable cause to believe that a registration is irregular absent a random, non-discriminatory, preconceived plan is contrary to the Fourth Amendment to the *Constitution of the United States* and *W.Va. Constitution*, art. 3, sec. 6.

In particular, this Court observed, in *Frisby*, that the weight of authority is that, without violating constitutional prohibitions against unreasonable searches and seizures, "motorists may be stopped for no other reason than examination of licenses and registrations when such examinations are done on a random basis pursuant to a preconceived plan, such as the stopping of every car at a check point[.]" 161 W.Va. at 738, 245 S.E.2d at 625.

Although the *Frisby* case did not involve a sobriety checkpoint roadblock, such a roadblock was involved in *Carte v. Cline*, 194 W.Va. 233, 460 S.E.2d 48 (1995). In *Carte*, a driver was stopped at a sobriety checkpoint roadblock near Belle, West Virginia. During the stop, a State Trooper detected the odor of alcohol in the car and noted the driver's slurred speech and bloodshot eyes. Subsequently, the driver was arrested for driving under the influence of alcohol, and his driver's license was revoked.

In *Carte*, the driver challenged the revocation of his license by asserting that the use of sobriety checkpoints violated constitutional prohibitions against unreasonable searches and seizures. In addition, the driver asserted that the State Police in establishing the roadblock failed to follow their own guidelines and procedures concerning sobriety checkpoint roadblocks.

Although, in *Carte*, we remanded the case for a determination of whether the State Police guidelines and procedures had been followed, we held in syllabus point 1: "Sobriety checkpoint roadblocks are constitutional when conducted within predetermined operational guidelines which minimize the intrusion on the individual and mitigate the discretion vested in police officers at the scene."

Important to our decision in *Carte* was the reasoning of the United States Supreme Court in *Michigan Department of State Police v. Sitz*, 496 U.S. 444, 110 S.Ct. 2481, 110 L.Ed.2d 412 (1990), upholding the constitutionality of a Michigan highway sobriety checkpoint program against a Fourth Amendment challenge. As to police roadblocks and road checks, generally, see 1 F.D. Cleckley, *Handbook on West Virginia Criminal Procedure* 347 (2nd ed. 1993); 4 W.R. LaFave, *Search and Seizure* § 10.8(d) (2nd ed. 1987); 1 W.E. Ringel, *Searches & Seizures, Arrests and Confessions* § 11.6(c) (2nd ed. 1995); 68 Am.Jur.2d *Searches and Seizures* § 52 (1993); 79 C.J.S. *Searches and Seizures* § 79 (1995); T.L. Kruk, Annotation, *Validity of Routine Roadblocks by State or Local Police for Purpose of Discovery of Vehicular or Driving Violations*, 37 A.L.R. 4th 10 (1985).

■ In the case before this Court, it must be emphasized that the appellant asks this Court to review the actions of the circuit court with respect to the appellant's motion to dismiss and motion to suppress, both of which motions challenged the validity of the police roadblock and the resulting stop of the appellant's vehicle. The circuit court conducted an evidentiary hearing upon those motions and denied them. Thus, as the ap-

pellant correctly asserts, this Court must consider the roadblock and stop in the context of the motions and the evidentiary hearing. In fact, it was at that stage of the proceedings below, rather than at trial, during which the validity of the roadblock and stop were challenged. In *State v. Sugg*, 193 W.Va. 388, 456 S.E.2d 469, 480 (1995), we recently stated that, on review, "this Court will not overturn the factual findings of a trial court on a motion to suppress unless they are clearly erroneous." A circuit court's rulings of law in such circumstances, however, are reviewed *de novo*. *State v. Lilly*, 194 W.Va. 595, 461 S.E.2d 101 (1995).[4]

■ Here, the record discloses no basis for disturbing the circuit court's finding that the roadblock in question was a routine road check, rather than a sobriety checkpoint. Trooper Galloway indicated that the purpose of the roadblock was to check for the possession and validity of driver's licenses, vehicle registration cards and mandatory insurance. Although Trooper Galloway admitted that the roadblock included a check for drunk drivers, he specifically denied that the roadblock had been conducted as a sobriety checkpoint. Moreover, he denied that the roadblock was used as a subterfuge to search for drunk drivers. Clearly, if a drunk driver appeared at such a roadblock, the police could take appropriate action, rather than ignore the violation. The evidence supports the finding of the circuit court that the Chief of Police of the Town of Marlinton and the Pocahontas County Deputy Sheriff were conducting a routine road check, rather than a sobriety checkpoint. Therefore, the circuit court's finding was not clearly wrong.

In so concluding, we note that, although the roadblock was not conducted pursuant to Department of Public Safety guidelines and procedures, there is no evidence in the record to suggest that the roadblock was administered in a discriminatory manner. As the parties agree, all vehicles approaching the roadblock were stopped. Moreover, the flashing lights of the police vehicles and the directing of traffic by the officers alerted approaching drivers of the existence and location of the roadblock. In fact, the roadblock was placed within the Town of Marlinton, rather than upon a remote highway and, was, thus, less intimidating to drivers. There is no evidence that the roadblock was conducted in an unsafe manner. Had this roadblock been a sobriety checkpoint roadblock, a more detailed scrutiny would be required. The record supports the circuit court's finding, however, that the roadblock was not a sobriety checkpoint.

■ Here, Trooper Galloway joined an in-progress road check conducted by the Chief of Police of the Town of Marlinton and a Pocahontas County Deputy Sheriff. The initial stop of the appellant's vehicle by Trooper Galloway was lawful, and the subsequent observation of the appellant by the Trooper was incident to the stop. As the circuit court stated during the trial: "The officer was there. He walked to the car, [and] conducted the investigation that he determined was reasonable based on what he had seen and the circumstances." The testimony concerning the manner in which the appellant's vehicle was driven toward the roadblock and the appellant's slurred speech and red eyes, and, in addition, the testimony concerning the odor of an alcoholic beverage and the results of the HGN test,[5] plentifully demonstrates the existence of probable cause to make an arrest for driving under the influence of alcohol. In syllabus point 1 of *Cunningham v. Bechtold*, 186 W.Va. 474, 413 S.E.2d 129 (1991), a case involving driving under the influence of alcohol, this Court held:

---

4. In *State v. Lilly, supra*, we stated:

By employing a two-tier standard, we first review a circuit court's findings of fact when ruling on a motion to suppress evidence under the clearly erroneous standard. Second, we review *de novo* questions of law and the circuit court's ultimate conclusion as to the constitutionality of the law enforcement action. 194 W.Va. at 600, 461 S.E.2d at 106.

5. This Court has recognized that the results of a horizontal gaze nystagmus (HGN) test may be considered as evidence upon the issue of whether a driver was under the influence of alcohol. *Dean v. Department of Motor Vehicles*, 195 W.Va. 70, 464 S.E.2d 589 (1995); *Cunningham v. Bechtold*, 186 W.Va. 474, 413 S.E.2d 129 (1991); *State v. Barker*, 179 W.Va. 194, 198, 366 S.E.2d 642, 646 (1988).

'Probable cause to make a misdemeanor arrest without a warrant exists when the facts and circumstances within the knowledge of the arresting officer are sufficient to warrant a prudent man in believing that a misdemeanor is being committed in his presence.' Syl., *Simon v. West Virginia Dep't of Motor Vehicles*, 181 W.Va. 267, 382 S.E.2d 320 (1989).

Accordingly, the arrest of the appellant by Trooper Galloway was lawful. Moreover, upon a careful review of the record, this Court is of the opinion that the evidence at trial was sufficient to support the circuit court's finding of guilt beyond a reasonable doubt of driving under the influence of alcohol.

Upon all of the above, therefore, the final order of the Circuit Court of Pocahontas County, entered on September 21, 1994, is affirmed.

Affirmed.

ALBRIGHT, J., did not participate.

MILLER, Retired J., sitting by temporary assignment.