IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2022 Term

_____

No. 20-0746
_____

FILED
February 24, 2022
released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

EVERETT FRAZIER, COMMISSIONER,
WEST VIRGINIA DIVISION OF MOTOR VEHICLES,
Petitioner Below, Petitioner

v.

JOSEPH D. SLYE,
Respondent Below, Respondent

_____

Appeal from the Circuit Court of Kanawha County,
Honorable Tera L. Salango, Judge
Civil Action No. 19-AA-123

AFFIRMED
_____

Submitted: January 5, 2022
Filed: February 24, 2022

Patrick Morrisey, Esq.
Attorney General
Elaine L. Skorich, Esq.
Assistant Attorney General
Charleston, West Virginia
Counsel for Petitioner

B. Craig Manford, Esq.
Martinsburg, West Virginia
Counsel for Respondent

CHIEF JUSTICE HUTCHISON delivered the Opinion of the Court.
JUSTICE ARMSTEAD dissents and reserves the right to file a separate opinion.

**SYLLABUS OF THE COURT**

1. "On appeal of an administrative order from a circuit court, this Court is bound by the statutory standards contained in W. Va. Code § 29A-5-4(a) and reviews questions of law presented *de novo*; findings of fact by the administrative officer are accorded deference unless the reviewing court believes the findings to be clearly wrong." Syl. Pt. 1, *Muscatell v. Cline*, 196 W. Va. 588, 474 S.E.2d 518 (1996).

2. "Upon judicial review of a contested case under the West Virginia Administrative Procedure Act, Chapter 29A, Article 5, Section 4(g), the circuit court may affirm the order or decision of the agency or remand the case for further proceedings. The circuit court shall reverse, vacate or modify the order or decision of the agency if the substantial rights of the petitioner or petitioners have been prejudiced because the administrative findings, inferences, conclusions, decisions or order are: '(1) In violation of constitutional or statutory provisions; or (2) In excess of the statutory authority or jurisdiction of the agency; or (3) Made upon unlawful procedures; or (4) Affected by other error of law; or (5) Clearly wrong in view of the reliable, probative and substantial evidence on the whole record; or (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.'" Syl. Pt. 2, *Shepherdstown Volunteer Fire Dept. v. State ex rel. State of W.Va. Human Rights Comm'n*, 172 W. Va. 627, 309 S.E.2d 342 (1983).

3. "'When the requirements of W. Va. Code, 17C-5-7 [1983] have otherwise been met, and a driver refuses to or fails otherwise to respond either affirmatively or negatively to an officer's request that he submit to a blood alcohol content test, the driver's refusal or failure to respond is a refusal to submit within the meaning of W. Va. Code, 17C-5-7 [1983].' Syl. pt. 1, *In re Matherly*, 177 W. Va. 507, 354 S.E.2d 603 (1987)." Syl. Pt. 3, *Cunningham v. Bechtold*, 186 W. Va. 474, 413 S.E.2d 129 (1991).

4. "A statutory provision which is clear and unambiguous and plainly expresses the legislative intent will not be interpreted by the courts but will be given full force and effect." Syl. Pt. 2, *State v. Epperly*, 135 W. Va. 877, 65 S.E.2d 488 (1951).

5. West Virginia Code § 17C-5-7(a) (2013) requires that a driver be given both an oral warning and a written statement advising him or her of the consequences of refusing to submit to the designated secondary chemical test. If both the oral warning and the written statement are not given to the driver, then the required conditions for revocation of the driver's license for an implied consent violation have not been satisfied.

**HUTCHISON, Chief Justice:**[1]

Petitioner Everett Frazier, Commissioner of the West Virginia Division of Motor Vehicles ("DMV"), appeals the August 25, 2020, order of the Circuit Court of Kanawha County denying the DMV's appeal of a September 10, 2019, final order of the Office of Administrative Hearings ("OAH"). The Commissioner contends that both the OAH and the circuit court erroneously concluded that Respondent Joseph D. Slye could not have his driver's license revoked for his refusal to submit to a designated secondary chemical test because the arresting officer failed to provide him with a written copy of the implied consent statement. This form statement advises a driver of the consequences of refusing to submit to the designated secondary chemical test to determine blood alcohol content, and that the refusal is final after fifteen minutes. The Commissioner also asserts that the respondent did not properly preserve his right to an OAH hearing for the implied consent revocation, therefore this matter did not qualify as a contested case over which the OAH had jurisdiction.

Having reviewed the parties' arguments, the record on appeal, and the controlling law, we conclude that the OAH and circuit court were correct in their application of the law. The plain and unambiguous language of West Virginia Code § 17C-

---

[1] Pursuant to an administrative order entered by this Court on February 7, 2022, the Honorable Alan D. Moats, Judge of the Nineteenth Judicial Circuit, was assigned to sit as a member of the Supreme Court of Appeals of West Virginia commencing February 7, 2022, following the resignation of former Justice Evan Jenkins; however, Justice Moats did not participate in this decision. Although former Justice Jenkins heard oral argument in this case, he did not participate in this decision.

5-7(a) (2013)[2] requires that a driver be given a written copy of the implied consent statement as a condition of revoking his or her driver's license for the refusal to submit to the secondary chemical test. The respondent was not provided with the required written notice. We also find no merit to the Commissioner's claim about the lack of a contested case. Accordingly, we affirm.[3]

## I. Facts and Procedural Background

At approximately 5:40 a.m. on May 23, 2018, Deputy B. Frick of the Berkeley County Sheriff's Department found the respondent sleeping in the driver's seat of his truck. The truck was parked in the middle of a road and was blocking the roadway. The keys were in the ignition and the engine was running. Deputy Frick opened the driver's door and woke the respondent. The deputy observed that the respondent was confused, drowsy, slurred his speech, and had a strong odor of alcohol on his breath. The respondent admitted that he had been heavily drinking Fireball, an alcoholic beverage, the night before.

---

[2] References in this opinion to West Virginia Code § 17C-5-7(a) are to the 2013 version of the statute, which applies in this case. This statute is quoted more fully in the discussion section of this opinion, but the pertinent language directs that a driver's license may be revoked for the refusal to submit to the secondary chemical test, "*Provided*, That prior to the refusal, the person is given an oral warning and a written statement advising him or her that his or her refusal to submit to the secondary test finally designated will result in the revocation of his or her license to operate a motor vehicle in this state . . . and that after fifteen minutes following the warnings the refusal is considered final." *Id.*

[3] The OAH and the circuit court both affirmed the revocation of the respondent's driver's license for a separate reason set forth in a separate order: driving under the influence of alcohol ("DUI") based upon the information provided by the arresting officer. The DUI revocation is not raised as an issue in this appeal and remains in effect.

2

The respondent refused to perform field sobriety tests and refused to take a preliminary breath test.

Deputy Frick arrested the respondent for driving under the influence of alcohol, controlled substances, and/or drugs ("DUI") and transported him to the sheriff's office. During the subsequent OAH hearing, the deputy testified about his attempt to administer the designated secondary chemical test to the respondent:

> I read him the Implied Consent. You know, I explained the – I just read the Implied Consent to him and then I observed him for 20 minutes. And then he refused to sign the Implied Consent. I then waited, you know, the additional 15 minutes, and then asked Mr. Slye if he would perform . . . a Secondary Chemical Test of his breath in which he refused again.

On cross-examination regarding the implied consent statement, the driver's lawyer asked Deputy Frick, "did you actually give him a copy?" The deputy answered, "I did not, sir."

The deputy completed and submitted to the DMV a West Virginia DUI Information Sheet describing the basis for the DUI arrest and indicating that the respondent had refused to submit to the designated secondary chemical test. On June 19, 2018, the DMV issued two separate orders revoking the respondent's driver's license: one order revoked his license for DUI in violation of West Virginia Code § 17C-5-2 (2016), while the other order revoked his license for refusing to submit to the secondary chemical test in violation of West Virginia Code § 17C-5-7.

3

The respondent requested an evidentiary hearing before the OAH, which was held on May 15, 2019. In the final order entered September 10, 2019, the OAH hearing examiner found that there was a preponderance of the evidence supporting the revocation for DUI. However, the hearing examiner found that because the deputy did not give a copy of the written implied consent statement to the respondent, the evidence did not show that the respondent was properly advised of the consequences for refusing the secondary chemical test. Accordingly, the OAH affirmed the revocation for DUI, but reversed the separate revocation order for refusing to submit to the secondary chemical test.[4] The DMV appealed to circuit court, which affirmed by order of August 25, 2020. Both the OAH and the circuit court concluded that state statutory law expressly requires a law enforcement officer who is seeking to administer a secondary chemical test to give a written copy of the implied consent statement to the accused driver. In this appeal, the DMV challenges the portion of the circuit court's order regarding the implied consent revocation.

## II. Standard of Review

This Court reviews a circuit court's order in an administrative appeal as follows:

> On appeal of an administrative order from a circuit court, this Court is bound by the statutory standards contained in W. Va. Code § 29A-5-4(a) and reviews questions of law presented *de novo*; findings of fact by the administrative officer

---

[4] Because the revocation for DUI was affirmed, the practical impact of the OAH's ruling was to shorten the total length of time that the respondent's license was revoked.

4

are accorded deference unless the reviewing court believes the findings to be clearly wrong.

Syl. Pt. 1, *Muscatell v. Cline*, 196 W. Va. 588, 474 S.E.2d 518 (1996). Furthermore,

> [u]pon judicial review of a contested case under the West Virginia Administrative Procedure Act, Chapter 29A, Article 5, Section 4(g), the circuit court may affirm the order or decision of the agency or remand the case for further proceedings. The circuit court shall reverse, vacate or modify the order or decision of the agency if the substantial rights of the petitioner or petitioners have been prejudiced because the administrative findings, inferences, conclusions, decisions or order are: "(1) In violation of constitutional or statutory provisions; or (2) In excess of the statutory authority or jurisdiction of the agency; or (3) Made upon unlawful procedures; or (4) Affected by other error of law; or (5) Clearly wrong in view of the reliable, probative and substantial evidence on the whole record; or (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."

Syl. Pt. 2, *Shepherdstown Volunteer Fire Dept. v. State ex rel. State of W.Va. Human Rights Comm'n*, 172 W. Va. 627, 309 S.E.2d 342 (1983). With these standards in mind, we consider the parties' arguments.

## III.  Discussion

The DMV raises two issues on appeal. The DMV contends that the OAH and the circuit court misinterpreted the requirements of the relevant statute regarding the need to provide a written copy of the implied consent statement to the respondent. Furthermore, the DMV asserts that the implied consent violation was not properly before the OAH. As explained below, we find no merit to either argument.

5

**A. Requirement to Provide a Written Copy of the Implied Consent Statement**

The DMV argues that the OAH and the circuit court misinterpreted the implied consent statute when concluding that a law enforcement officer who is seeking to administer a secondary chemical test must provide the driver with an actual, written copy of the implied consent statement. The DMV claims that a driver is not entitled to a mere "souvenir copy" of the implied consent statement "to take home." The DMV argues that the deputy's action of asking the respondent to sign the implied consent statement, which the respondent refused to do, was sufficient to have allowed the respondent the opportunity to read the form. Furthermore, the DMV contends that the deputy indicated compliance with the implied consent statute by checking a box on the DUI Information Sheet; the DMV argues that this is proof despite the officer's testimony. The respondent argues that the relevant statute required that he be given a written notice of the consequences of his refusal, that the deputy admitted on cross-examination that he did not provide that written notice, and therefore the respondent's license could not be revoked on this basis. After reading the plain and unambiguous statutory language and the deputy's testimony at the OAH hearing, we agree with the respondent on this issue.

By operation of state law, anyone who drives a motor vehicle in West Virginia has impliedly given consent to submit to a secondary chemical test for purposes of ascertaining his or her blood alcohol content:

> Any person who drives a motor vehicle in this state is considered to have given his or her consent by the operation of the motor vehicle to . . . a secondary chemical test of either his

6

or her blood or breath to determine the alcohol concentration in his or her blood, or the concentration in the person's body of a controlled substance, drug, or any combination thereof.

W. Va. Code § 17C-5-4(a) (2013 & 2020). The failure to submit to the designated secondary chemical test, by itself, will result in the revocation of a driver's license pursuant to West Virginia Code § 17C-5-7 if the statutory requirements are met:

> "When the requirements of W. Va. Code, 17C-5-7 [1983] have otherwise been met, and a driver refuses to or fails otherwise to respond either affirmatively or negatively to an officer's request that he submit to a blood alcohol content test, the driver's refusal or failure to respond is a refusal to submit within the meaning of W. Va. Code, 17C-5-7 [1983]." Syl. pt. 1, *In re Matherly*, 177 W. Va. 507, 354 S.E.2d 603 (1987).

Syl. Pt. 3, *Cunningham v. Bechtold*, 186 W. Va. 474, 413 S.E.2d 129 (1991).

West Virginia Code § 17C-5-7(a) directs that as a condition for revoking a driver's license for an implied consent violation, the driver must be given an oral warning and a written statement advising that his or her refusal to submit to the secondary test will result in license revocation. Specifically, the applicable 2013 version of this statute provides:

> (a) If any person under arrest as specified in section four of this article refuses to submit to any secondary chemical test, the tests shall not be given: *Provided*, *That prior to the refusal, the person is given an oral warning and a written statement advising him or her that his or her refusal to submit to the secondary test finally designated will result in the revocation of his or her license to operate a motor vehicle in this state for a period of at least forty-five days and up to life; and that after fifteen minutes following the warnings the refusal is considered final.* The arresting officer after that period of time expires has no further duty to provide the person with an opportunity to

7

take the secondary test. The officer shall, within forty-eight hours of the refusal, sign and submit to the Commissioner of Motor Vehicles a written statement of the officer that: (1) He or she had probable cause to believe the person had been driving a motor vehicle in this state while under the influence of alcohol, controlled substances or drugs; (2) the person was lawfully placed under arrest for an offense relating to driving a motor vehicle in this state while under the influence of alcohol, controlled substances or drugs; (3) the person refused to submit to the secondary chemical test finally designated in the manner provided in section four of this article; and (4) *the person was given a written statement advising him or her that his or her license to operate a motor vehicle in this state would be revoked for a period of at least forty-five days and up to life if he or she refused to submit to the secondary test finally designated in the manner provided in section four of this article.* The signing of the statement required to be signed by this section constitutes an oath or affirmation by the person signing the statement that the statements contained in the statement are true and that any copy filed is a true copy. The statement shall contain upon its face a warning to the officer signing that to willfully sign a statement containing false information concerning any matter or thing, material or not material, is false swearing and is a misdemeanor. Upon receiving the statement the commissioner shall make and enter an order revoking the person's license to operate a motor vehicle in this state for the period prescribed by this section. . . .

W. Va. Code § 17C-5-7(a), in part (emphasis added).[5]

---

[5] Although this statute has been amended since 2013, the current version retains the requirement of providing both the oral and the written warnings:

> (b) Upon requesting that a person submit to the secondary test, designated pursuant to § 17C-5-4 of this code, the person shall be given the written and verbal warnings set forth in § 17C-5-4(e) of this code. After the person under arrest is given the required written and verbal warnings, the person shall have the opportunity to submit to, or refuse to submit to, the secondary test. . . .

The statutory language "*Provided, That prior to the refusal, the person is given an oral warning and a written statement*" is plain and unambiguous. *See id.* So is the subsequent language in the statute directing the police officer to certify that "the person was given a written statement advising him or her that his or her license to operate a motor vehicle in this state would be revoked . . . ." *See id.* "A statutory provision which is clear and unambiguous and plainly expresses the legislative intent will not be interpreted by the courts but will be given full force and effect." Syl. Pt. 2, *State v. Epperly*, 135 W. Va. 877, 65 S.E.2d 488 (1951); *accord* Syl. Pt. 5, *State v. General Daniel Morgan Post No. 548, V.F.W.*, 144 W. Va. 137, 107 S.E.2d 353 (1959) ("When a statute is clear and unambiguous and the legislative intent is plain, the statute should not be interpreted by the courts, and in such case it is the duty of the courts not to construe but to apply the statute."); Syl. Pt. 1, *State v. Elder*, 152 W. Va. 571, 165 S.E.2d 108 (1968) ("Courts always endeavor to give effect to the legislative intent, but a statute that is clear and unambiguous will be applied and not construed."). Pursuant to this plain and unambiguous statutory language, there can be no dispute that both an oral warning and a written statement must be given to a driver as preconditions for revoking his or her driver's license for refusing to submit to the designated secondary chemical test.

---

(c) The officer shall . . . sign and submit . . . a written statement that: . . . (4) the person was given the verbal warnings and the written statement required by subsection (b) of this section and § 17C-5-4 of this code. . . .

W. Va. Code § 17C-5-7, in part (2020).

9

In the early 1980's, West Virginia Code § 17C-5-7 (1983) only required that a written statement regarding refusal be given to the driver. However, the statute was amended in 1986 to add the requirement that the driver "shall be informed orally and in writing" of the consequences of refusing the secondary chemical test. *See Gibbs v. Bechtold*, 180 W. Va. 216, 217 n.1, 376 S.E.2d 110, 111 n.1 (1988) (quoting 1983 and 1986 versions of statute). By adding the oral warning while retaining the requirement of providing the written statement, the Legislature obviously intended that both types of warnings must be given as a condition for revocation of the license for an implied consent violation. *See Cunningham*, 186 W. Va. at 478, 413 S.E.2d at 133 (applying 1989 version of law and concluding that officer's testimony that he provided oral warning and gave copy of implied consent form to driver was proof supporting implied consent violation).

The mandate to provide a written statement regarding the consequences of refusing the secondary chemical test is also found in a companion statute, West Virginia Code § 17C-5-4(e) (2013):

> Any person to whom a preliminary breath test is administered who is arrested *shall be given a written statement advising him or her that his or her refusal to submit to the secondary chemical test* pursuant to subsection (d) of this section will result in the revocation of his or her license to operate a motor vehicle in this state for a period of at least forty-five days and up to life.

*Id.* (emphasis added). Although this particular code subsection is not implicated in the respondent's case because he did not submit to a preliminary breath test, the statutory

language shows, once again, the Legislature's clear intent that the written statement must be given to the driver.

Having reviewed the plain and unambiguous statutory language, we hold that West Virginia Code § 17C-5-7(a) (2013) requires that a driver be given both an oral warning and a written statement advising him or her of the consequences of refusing to submit to the designated secondary chemical test. If both the oral warning and the written statement are not given to the driver, then the required conditions for revocation of the driver's license for an implied consent violation have not been satisfied.

Returning to the facts of this case, the DMV argues that it was sufficient for the deputy to have read the written implied consent statement aloud and then asked the respondent to sign the implied consent document. The DMV suggests that the respondent could have read the form when he was asked to sign it. The DMV argues that providing anything more would simply be giving the driver a "souvenir copy" of the implied consent statement "to take home." This argument is contrary to the plain statutory language of West Virginia Code § 17C-5-7 requiring that a written statement of the consequences of refusal be given to the driver.

Notably, the requirement for providing the written statement is even recognized in the revocation order that the DMV issued to the respondent and that is the subject of this appeal. That order states, in relevant part:

11

> Your driving privileges will be revoked on 12:01 a.m. ET on July 24, 2018 because an officer's sworn statement shows that (1) You were driving a motor vehicle on May 23, 2018 in West Virginia while under the influence of alcohol, controlled substances, drugs or a combination of those, (2) You were lawfully placed under arrest for an offense relating to driving a motor vehicle in West Virginia while under the influence of alcohol, controlled substances, drugs or a combination of those, (3) You refused to submit to the secondary chemical test designated, and (4) *You were given a written statement advising you that your license to operate a motor vehicle in this State would be revoked for a period of at least 1 year and up to life if you refused to submit to the secondary chemical test.*

Order of Revocation issued June 19, 2018, in DMV File No. 402481A (emphasis added). It is difficult to understand how the DMV can argue that a written statement need not be given to the driver, when the agency's own order expressly states that the giving of this statement is an element of the offense.

Moreover, the DMV's argument that the written notice is a mere "souvenir copy" entirely misses the point of the statute. West Virginia Code § 17C-5-7(a) directs that the oral warning and the written statement be given "prior to the refusal[.]" There is a fifteen-minute waiting period where a driver may change his or her mind and submit to the secondary chemical test. *See id.* After the fifteen minutes, the refusal is final. *See id.* Having a written statement to read over during the fifteen minutes, when the statement clearly lists the consequences of the refusal, is obviously intended to aid the driver's decision-making. Moreover, even if we were to assume *arguendo* that providing a copy of the written consequences of refusal is nothing more than providing a "souvenir copy," it is still the law and must be followed.

12

The DMV also argues that an implied consent violation was proven by information in the West Virginia DUI Information Sheet that Deputy Frick completed and submitted to the DMV regarding the respondent's arrest. On this DUI Information Sheet, the deputy checked a box beside the language, "IMPLIED CONSENT READ AND PROVIDED TO THE SUBJECT[.]" This Court has held that a West Virginia DUI Information Sheet, also known as a Statement of Arresting Officer, is admissible evidence in the administrative hearing:

> In an administrative hearing conducted by the Division of Motor Vehicles, a statement of an arresting officer, as described in W. Va. Code § 17C-5A-1(b) (2004) (Repl. Vol. 2004), that is in the possession of the Division and is offered into evidence on behalf of the Division, is admissible pursuant to W. Va. Code § 29A-5-2(b) (1964) (Repl. Vol. 2002).

Syl. Pt. 3, *Crouch v. W. Va. Div. of Motor Vehicles*, 219 W.Va. 70, 631 S.E.2d 628 (2006); *see also Frazier v. Fouch*, 244 W. Va. 347, ___, 853 S.E.2d 587, 593 (2020) (reaffirming validity of *Crouch* syllabus point 3 for OAH administrative hearings).

Although the contents of a West Virginia DUI Information Sheet are admissible, any evidence contained therein is still subject to rebuttal by other evidence. The *Crouch* court clearly explained this: "We point out that the fact that a document is deemed admissible under the statute does not preclude the contents of the document from being challenged during the hearing. Rather, the admission of such a document into evidence merely creates a rebuttable presumption as to its accuracy." *Crouch*, 219 W. Va. at 76 n.12, 631 S.E.2d at 634 n.12; *see also*, *Fouch*, 244 W. Va. at ___, 853 S.E.2d at 593

13

(recognizing rebuttable presumption of accuracy of documents admitted per *Crouch*); *Miller v. Chenoweth*, 229 W. Va. 114, 121, 727 S.E.2d 658, 665 (2012) (stating that driver "correctly observes that the D.U.I. Information Sheet simply created a rebuttable presumption as to its accuracy."); *Groves v. Cicchirillo*, 225 W. Va. 474, 479, 694 S.E.2d 639, 644 (2010) (reiterating rebuttable presumption as to accuracy of evidence admitted pursuant to *Crouch*).[6]

With regard to the respondent's arrest, much of the DUI Information Sheet was left blank. The very limited form language beside the checked box, "IMPLIED CONSENT READ AND PROVIDED TO THE SUBJECT[,]" is the only information in the DUI Information Sheet pertaining to the warnings required by West Virginia Code § 17C-5-7(a). However, the record contains the deputy's express testimony under oath that he gave the oral warning by reading the implied consent statement, but he did *not* provide the respondent with a copy of the written statement. This critical admission given during cross-examination went unchallenged at the hearing. There was no other evidence offered at the hearing for this issue, and the DMV's lawyer did not take the opportunity to

---

[6] In memorandum decisions, this Court has frequently acknowledged the rebuttable nature of evidence admitted pursuant to *Crouch*. *See, e.g., Frazier v. Miller*, No. 20-0745, 2021 WL 2023586, *3 (W. Va. May 20, 2021) (memorandum decision) (recognizing that admission of evidence pursuant to *Crouch* is subject to rebuttable presumption as to accuracy); *Frazier v. Shaffer*, No. 20-0314, 2021 WL 653242, *4-5 (W. Va. Feb. 19, 2021) (memorandum decision) (same); *Frazier v. Yoder*, No. 20-0336, 2021 WL 653244, *2-3 (W. Va. Feb. 19, 2021) (memorandum decision) (same); *Frazier v. Harless*, No. 20-0127, 2021 WL 195293, *5 (W. Va. Jan. 20, 2021) (memorandum decision (same); *Frazier v. Levin*, No. 20-0091, 2021 WL 195292, *5 (W. Va. Jan. 20, 2021) (memorandum decision) (same).

14

rehabilitate the deputy's testimony after this admission. Accordingly, this portion of the DUI Information Sheet was effectively rebutted by the respondent.

The OAH hearing examiner reviewed the evidence, both documentary and testimonial, and found that the deputy did not provide a written statement of the warnings to the respondent. Based upon the deputy's testimony, this finding of fact was not clearly wrong. *See Muscatell*, 196 W. Va. at 590, 474 S.E.2d at 520, syl. pt. 1 ("findings of fact by the administrative officer are accorded deference unless the reviewing court believes the findings to be clearly wrong"); Syl. Pt. 1, *Francis O. Day Co., Inc. v. Director, Div. of Environmental Protection*, 191 W. Va. 134, 443 S.E.2d 602 (1994) ("Evidentiary findings made at an administrative hearing should not be reversed unless they are clearly wrong."). Because this necessary factual prerequisite was not proven by the DMV, the OAH did not err in overturning the Commissioner's order revoking the respondent's license for his refusal to submit to the secondary chemical test and the circuit court did not err in affirming the OAH's ruling.

**B. OAH's Authority to Consider the Implied Consent Revocation Order**

In addition, the DMV contends that the implied consent revocation was not properly before the OAH because, when completing the written form to request an OAH hearing, the respondent's counsel failed to expressly challenge the finding that the respondent refused to submit to the secondary chemical test. Specifically, counsel did not check a box on the hearing request form beside the following language: "I wish to challenge

15

the allegation that I refused to submit to the designated secondary chemical test." Instead, counsel wrote on the hearing request form that they would be challenging issues listed in an attached letter, but refusal to submit to the secondary chemical test is not listed in that letter. Accordingly, the DMV argues that there was no "contested case" with regard to this particular issue. *See W. Va. Code* §§ 29A-5-1 to -5 (providing for administrative hearing process in "contested cases").

The respondent asserts that the implied consent issue was properly before the OAH. He notes that the DMV issued two separate orders revoking his driver's license for the events of May 23, 2018. One order revoked his license for DUI, and the other order revoked his license for the failure to submit to the secondary chemical test, and each of these orders contained a different DMV file number. The respondent's counsel included *both* file numbers on the form requesting the OAH hearing. Furthermore, the respondent argues that the DMV waived this issue by not raising it below. Instead, the DMV's lawyer offered evidence and argument at the OAH hearing in an effort to prove the implied consent violation.

After reviewing the record in this matter, we conclude that the respondent's hearing request form was sufficient to notify the OAH and the DMV that there was a contested case with respect to the implied consent violation. By including the DMV File Number for the order that revoked his license for the *sole reason* of refusing to submit to the designated secondary chemical test, the respondent accomplished the same thing as checking the box beside the language, "I wish to challenge the allegation that I refused to

16

submit to the designated secondary chemical test." There could be no other basis for challenging that particular revocation order. Counsel for the DMV obviously understood that the implied consent revocation was at issue since he offered evidence and argument in support of it.

The DMV fails to direct this Court to any specific statute, rule, or case that would make the failure to check this particular box on the hearing request form a jurisdictional defect, particularly when the applicable DMV file number was included on the form. Accordingly, we reject the DMV's argument.

## IV. Conclusion

For the foregoing reasons, the circuit court's August 25, 2020, order is affirmed.

Affirmed.